IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Cause No. 4:22-cr-00017-BMM-1 |
| Plaintiff, | |
| vs. | **ORDER** |
| RICCI LEA CASTELLANOS, | |
| Defendant. | |

# INTRODUCTION

The Court sentenced Defendant Ricci Lea Castellanos ("Castellanos") to 18 months' imprisonment on November 8, 2023. (Doc. 61.) Castellanos filed her first motion for compassionate release/change of report date on December 17, 2023. (Doc. 64.) The Court denied Castellanos's first motion but permitted her to submit additional information detailing her health issues and course of treatment. (Doc. 67.) Castellanos did so (Doc. 68), and the Court denied her motion for reconsideration on January 2, 2024 (Doc. 69). Castellanos began her term of incarceration on January 3, 2023. (Doc. 73 at 2.)

Castellanos filed another motion for compassionate release on July 5, 2024. (Doc. 70.) Castellanos's counsel filed a supplemental second motion for sentence

1

reduction pursuant to compassionate release on September 6, 2024. (Doc. 73.) Castellanos argues that her good conduct, medical issues, and subjection to inhumane conditions while incarcerated at FCI Dublin warrant a sentence reduction. (Doc. 73 at 6–9.) The Government opposes this motion. (Doc. 74.) The Government argues that Castellanos has limited incarceration time remaining, that Castellanos was incarcerated most recently at FMC Lexington with access to medical treatment services, and that the nature of her crime justifies continued imprisonment. (Doc. 74 at 3–6.) The Court agrees.

## FACTUAL BACKGROUND

The Government filed an indictment on March 3, 2022, charging Castellanos with conspiracy to commit wire fraud in violation of 18 U.S.C. § 1349, seven counts of wire fraud in violation of 18 U.S.C. §§ 1343 and 2, five counts of aggravated identity theft in violation of 18 U.S.C. §§ 1028A(a)(1) and 2, and student financial aid fraud in violation of 20 U.S.C. § 1097(a). (Doc. 2.) Castellanos pleaded guilty to Count 1, conspiracy to commit wire fraud, and Count 9, aggravated identity theft. (Doc. 41.) Castellanos's total offense level of 11 and criminal history category of II resulted in a guideline range of 10 to 16 months' imprisonment. (Doc. 45 at 2.) The aggravated identity theft charge carried a two-year mandatory minimum sentence, to be imposed consecutively. (*Id.*) The Court varied downward and imposed a

2

sentence of 18 months' imprisonment for Count 1 and Count 9, to run concurrently. (Doc. 61.) Castellanos began her incarceration on January 3, 2024. (Doc. 67 at 4; Doc. 69 at 2.) Castellanos transferred to a Residential Reentry Center in California on September 16, 2024. (Doc. 73 at 6; Doc. 75.) Castellanos will be released on December 28, 2024, less than 12 months after her incarceration began. *See* Inmate Locator, https://www.bop.gov/inmateloc (accessed October 7, 2024).

## DISCUSSION

### I.    Availability of Relief Under 18 U.S.C. § 3582

The First Step Act amended the United States Code to "promote rehabilitation of prisoners and unwind decades of mass incarceration." *United States v. Brown*, 411 F. Supp. 3d 446, 448 (S.D. Iowa 2019) (citing Cong. Research Serv., R45558, The First Step Act of 2018: An Overview 1 (2019)). The Court may modify a term of imprisonment upon motion of a defendant if the Court finds that "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). The Court must consider the factors set forth in 18 U.S.C. § 3553(a) ("§ 3553(a)"), and whether the reduction proves "consistent with applicable policy statements issued by the Sentencing Commission" when the Court is considering the reduction of a defendant's term of imprisonment. *Brown*, 411 F. Supp. 3d at 448 (citing 18 U.S.C. § 3582(c)(1)(A)).

3

Congress has not defined the circumstances that rise to the level of "extraordinary and compelling," except to say that "[r]ehabilitation of the defendant alone" is insufficient. 28 U.S.C. § 994(t); *Brown*, 411 F. Supp. 3d at 448. The law instead directs the United States Sentencing Commission ("USSC") to issue a policy statement describing "what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t); *United States v. Aruda*, 993 F.3d 797, 800 (9th Cir. 2021).

Section 1B1.13 of the United States Sentencing Guidelines ("USSG"), titled Reduction in Term of Imprisonment Under 18 U.S.C. § 3582(c)(1)(A) ("Policy Statement"), previously only provided a policy statement for motions filed by the BOP director. Amendments to USSG § 1B1.13 took effect on November 1, 2023. "The amendment revises §1B1.13(a) to reflect that a defendant is now authorized to file a motion under 18 U.S.C. § 3582(c)(1)(A), making the policy statement applicable to both defendant-filed and BOP-filed motions." USSC, Amendments to the Sentencing Guidelines, Policy Statements, Official Commentary, and Statutory Index, at 7, https://www.ussc.gov/sites/default/files/pdf/amendment-process/official-text-amendments/202305_Amendments.pdf.

Section 1B1.13(b) outlines several categories of circumstances that constitute

4

extraordinary and compelling reasons for reducing a defendant's sentence. USSG § 1B1.13(b). These categories include the following: (1) medical circumstances; (2) advanced age of the defendant; (3) family circumstances; (4) the defendant was a victim of abuse while incarcerated; and (5) unusually long sentences. USSG § 1B1.13(b). The Sentencing Commission provides specific examples of medical circumstances constituting an extraordinary and compelling reason, including when a defendant "suffer[s] from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death." U.S.S.G. § 1B1.13(b)(1)(C).

Section 1B1.13(b)(5) further provides a catchall category where "any other circumstance or combination of circumstances that, when considered by themselves or together with any of the [other described reasons], are similar in gravity to [the other described reasons]." USSG § 1B1.13(b)(5). The USSC established the catchall "other reasons" provision to acknowledge that "what circumstances or combination of circumstances are sufficiently extraordinary and compelling to warrant a reduction in sentence is best provided by reviewing courts, rather than through an effort by the Commission to predict and specify in advance all of the grounds on which relief may be appropriate." USSC, Amendments to the Sentencing Guidelines, Policy Statements, Official Commentary, and Statutory Index, at 10.

### A. Exhaustion of Remedies

A defendant must fully exhaust administrative remedies by filing a request with the warden of the defendant's facility before filing a motion for compassionate release with the court. 18 U.S.C. § 3582(c)(1)(A). Castellanos filed a request for compassionate release at FCI Dublin on April 17, 2024. (Doc. 73 at 5.) Castellanos received either a denial or no response within 30 days. (Doc. 73 at 5.) The parties agree that Castellanos has exhausted her administrative remedies. (Doc. 73 at 5.)

### B. Reasons for Release

Castellanos asserts the same medical issues from her first two motions for compassionate release but further notes the general medical neglect and inhumane conditions she experienced at FCI Dublin. (Doc. 70; Doc. 73 at 6.) Castellanos has a "secondary thrombocytosis most likely related to other medical problems such as asthma." (Doc. 73 at 7.) Medical records indicate that the treatment for her pulmonology issues and other illnesses involves medication and further monitoring. (Doc. 73 at 7.) Castellanos argues that follow-up treatment for her conditions may be more readily available in the community rather than in the Bureau of Prisons. (Doc. 73 at 9.)

Castellanos's medical problems do not amount to extraordinary and compelling reasons as required by 18 U.S.C. § 3582(c)(1)(A). At most,

Castellanos's medical conditions require the medications and "further monitoring" she is already receiving through the BOP. (Doc. 73 at 7–8; Doc. 73-2.) Castellanos does not allege that she requires long-term or specialized care or that she is not receiving medical care for her conditions. (Doc. 73.)

Castellanos alleges that she experienced "general medical neglect" during her time at FCI Dublin. (Doc. 70 at 1.) Castellanos likely served "harder time" during her incarceration at FCI Dublin. (Doc. 73 at 9; Doc. 73-3.) Castellanos alleges that FCI Dublin exposed her to asbestos, mold, and inhumanely high temperatures. (Doc. 70 at 1.) The Court acknowledges that FCI Dublin inflicted serious harm on inmates, which resulted in the historic closure of the facility. (Doc. 73-3.) Defendants incarcerated at FCI Dublin and its satellite camp had "limited to no access to constitutionally adequate medical and mental health care[.]" (*Id.*)

Castellanos reported for her term of incarceration at FCI Dublin on January 3, 2024. (Doc. 67 at 4; Doc. 69 at 2.) Castellanos received medical testing and medications beginning a few days after she reported to FCI Dublin and extending through her transfer to a different facility. (Doc. 73-2 at 124–218.) The United States District Court for the Northern District of California issued a preliminary injunction on March 15, 2024, to protect FCI Dublin inmates. (Doc. 73-3.) Castellanos arrived at FCI Lexington by mid-April. (Doc. 73-2 at 43 (14-day

7

physician evaluation performed on May 2, 2024).) No inmates remained at FCI Dublin after May 1, 2024. (Doc. 73-3.) Though Castellanos undoubtedly experienced the same difficult conditions as others incarcerated at FCI Dublin, she resided there for only four months. In total, Castellanos will have spent less than 12 months in custody by the time she is released in December, six months less than her original 18-month sentence. (Doc. 74 at 3; Doc. 61.)

Though Castellanos's months at the FCI Dublin satellite camp placed her in a category of inmates who faced unusually difficult circumstances, Castellanos continued to receive medical treatment while incarcerated at FCI Dublin. (Doc. 73-2.) Castellanos received lab testing and treatment for her other conditions, including medications for asthma, PCOS, and anxiety, while at FCI Dublin. (See, e.g., Doc. 73-2 at 74–75, 85.) The notes from Castellanos's appointments at FCI Lexington indicate that her medical conditions did not require any major alterations to her treatment once Castellanos left FCI Dublin. (*See, e.g.*, Doc. 73-2 at 5.) Castellanos's short time at FCI Dublin does not present an extraordinary and compelling reason to reduce her sentence.

Finally, Castellanos's good conduct and positive work reports during her time in custody, without more, do not serve as a reason to reduce her sentence. (Doc. 73 at 6.) "[R]ehabilitation of the defendant is not, by itself, an extraordinary and

8

compelling reason." U.S.S.G. § 1B1.13(d). Considering the six-month reduction Castellanos has already received in her significantly below-range sentence, her current placement at a residential reentry facility, and her upcoming release date at the end of December, the Court cannot find that her circumstances warrant a sentence reduction.

### C. Section 3553(a) Factors

Even if the Court did find extraordinary and compelling reasons for reducing Castellanos's sentence, the Court still would have to determine whether the requested reduction would comport with the § 3553(a) factors. Section 3553(a) of Title 18 of the United States Code provides:

> The court, in determining the particular sentence to be imposed, shall consider—
> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed—
>     (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>     (B) to afford adequate deterrence to criminal conduct;
>     (C) to protect the public from further crimes of the defendant; and
>     (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a). The Court also must consider the kinds of sentences available, the need to provide restitution to any victims, the recommended guideline sentence,

any pertinent policy statement, and the need to avoid unwarranted sentence disparities. (*Id.*)

Castellanos' efforts to exploit financial aid resources meant to support students resulted in a fourteen-count indictment for various fraud offenses. (Doc. 2.) Castellanos stole the identities of several victims and created fake tribal enrollment forms to take resources from others. (Doc. 74 at 4.) During her criminal enterprise spanning three years, Castellanos stole $68,175.69 and laundered it through the university system. (Doc. 74.) Incarceration serves as a deterrent for others who commit serious financial crimes. The Court remains sensitive to Castellanos's circumstances and the conditions she endured at FCI Dublin's satellite camp. The Court finds, however, that a reduction of Castellanos's sentence at this time would not comport with the § 3553(a) factors.

## CONCLUSION

Castellanos has failed to demonstrate that extraordinary and compelling reasons exist for reducing her sentence. Even if the circumstances presented by Castellanos rose to the level of extraordinary and compelling, Castellanos has failed to show that a reduction of her sentence would be consistent with the § 3553(a) factors. The Court will deny Castellanos's motion for compassionate release.

## ORDER

Accordingly, **IT IS ORDERED** that Castellanos's motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A) and (Doc. 70; Doc. 73) is **DENIED.**

DATED this 16th day of October, 2024.

_____
Brian Morris, Chief District Judge
United States District Court